**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KATHLEEN S. CURRY, | ) | |
| individually and derivatively on behalf of | ) | |
| Jantek Industries, L.L.C., | ) | |
| 845 Oakwood Drive | ) | |
| Red Lion, Pennsylvania 17356 | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. |
| JANTEK INDUSTRIES, L.L.C., | ) | |
| a New Jersey Limited Liability Company | ) | |
| registered to do business in the | ) | |
| Commonwealth of Pennsylvania, | ) | **Jury Trial Demanded** |
| 230 Route 70 | ) | |
| Medford, New Jersey 08055 | ) | |
| | ) | |
| SERVE:   Prentice Hall Corp. System, | ) | |
|          Resident Agent | ) | |
|          830 Bear Tavern Rd. | ) | |
|          Trenton, New Jersey 08628 | ) | |
| and | ) | |
| | ) | |
| KEITH J. KAILIAN, | ) | |
| 905 South Beaver Street | ) | |
| York, Pennsylvania 17403, | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, Kathleen S. Curry, sues Defendants, Jantek Industries, L.L.C. ("Defendant Jantek") and Keith J. Kailian ("Defendant Kailian") (Defendant Jantek and Defendant Kailian taken together, the "Defendants"), as follows:

1.      Plaintiff brings this action seeking injunctive relief, actual and punitive damages, and statutory damages arising from Defendants' violations of the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.* (the "Sherman Act"); the Clayton Act, 15 U.S.C. § 14 *et seq.* (the "Clayton Act"); breach of contract; and breach of fiduciary duty.

## PARTIES

2.      Plaintiff, Kathleen S. Curry is an adult individual residing at 845 Oakwood Drive, Red Lion, Pennsylvania 17356.  She owns and has owned, at all times relevant to this matter, an approximately fourteen percent (14%) interest in Defendant Jantek.

3.      Defendant, Jantek Industries, L.L.C. is a New Jersey limited liability company with a principal place of business located on Route 70, Number 230, Medford, New Jersey 08055.  Defendant Jantek engages generally in the business of manufacturing and distributing replacement windows, doors, patio rooms and other home improvement related products.

4.      Defendant, Keith J. Kailian is an adult individual residing at 905 South Beaver Street, York, Pennsylvania 17403.  He owns an approximately sixty-six percent (66%) interest in the Defendant Jantek (the "Majority Member") and, at all times relevant to this matter, was and continues to be Defendant Jantek's President, General Manager and Chief Executive Officer.

## JURISDICTION

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and/or 1337.  Supplemental jurisdiction over Plaintiffs' state law claims is conferred by 28 U.S.C. § 1367.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 15 U.S.C. §§ 15(a) and 22.

## BACKGROUND

6.      Plaintiff is a minority owner in Defendant Jantek, holding approximately fourteen percent (14%) of the membership interests in the company.

7.      She is a party to that certain Member Interest Purchase Agreement, dated January 1, 2002 (the "Jantek Purchase Agreement"), wherein Nourhan Kailian, Thomas N. Kailian, Angell P. Wesner, collectively, the "Sellers", sold their membership interests in Defendant Jantek to Plaintiff, Defendant Kailian and John P. Kailian, collectively, the "Buyers".  A copy of the Jantek Purchase Agreement is attached hereto as Exhibit A.

8.     The Jantek Purchase Agreement contains, *inter alia*, the following covenants:

> "4.G.   <u>Maintenance of Contractual Obligations</u>.  The Buyers shall cause the Company to maintain in full force and effect all leases…and perform under all of its other contracts, if the failure to maintain such lease or perform under any such contract would result in a Material Adverse Change."

(Exhibit A at p. 7, Section 4.G.)

> "4.J.   <u>Compliance with Laws</u>.  The Buyers shall cause the Company to perform and promptly comply in all material respects, and cause all of its property to be maintained, used and operated in all material respects, in accordance with all Governmental Rules..."

(Exhibit A at p. 8, Section 4.J.)

> "5.H.   <u>Change of Business</u>.  Company shall not engage in any business operation other than the business engaged in on the date hereof."

(Exhibit A at p. 9, Section 5.H.)

9.     "Governmental Rule" is defined in Section 6 of the Jantek Purchase Agreement as "any law, statute, rule, regulation, permit, license, treaty, ordinance, order, writ, injunction, decree, judgment, guideline, award, standard, directive or decision of any governmental authority..."  (Exhibit A at p. 12, Section 6.)

10.     "Material Adverse Change" is defined in Section 6 of the Jantek Purchase Agreement to mean, *inter alia*, "any circumstance or event which . . . (ii) is material and adverse to the business, properties, assets, financial condition, or results of operations of the Company…"  (Exhibit A at p. 13, Section 6.)

4

11.    Defendant Jantek entered into a certain Supply and Operating Agreement, also dated January 1, 2002 (the "Supply Agreement") with Appleby Systems, Inc., a Pennsylvania corporation ("Appleby").  A copy of the Supply Agreement is attached hereto as Exhibit B.

12.    Appleby engages generally in the business of selling and installing replacement windows, doors, patio rooms, bathtub renewals and other home improvement related products.

13.    Plaintiff and Defendant Kailian are both minority shareholders in Appleby.

14.    Pursuant to the Supply Agreement, Defendant Jantek purports to require Appleby to, *inter alia*, purchase exclusively from Defendant Jantek all of Appleby's replacement windows and patio rooms (defined therein as the "Exclusive Products").  (Exhibit B at pp. 1-3, Section 2(a)(i) ("Jantek shall supply these Exclusive Products exclusively to [Appleby] . . ."); Section 2(a)(iv) ("[Appleby] agrees to purchase all of its requirements for the Exclusive Products and related services for the Primary Territory."); Section 2(b)(iv) ("[Appleby] agrees to purchase all of its requirements for the Exclusive Products and related services for the Adjacent Territory."); and Section 2(c)(iii) ("[Appleby] agrees to purchase all of its requirements for the Exclusive Products and related services for the Remaining Territories from Jantek.").)

15.     On or about November 12, 2002, Appleby sent Defendant Jantek a letter of concern over, *inter alia*, the legality and quality of Defendant Jantek's products provided to Appleby ("Appleby Letter").  A copy of the Appleby Letter is attached hereto as Exhibit C.

16.     Appleby has since ceased purchasing patio rooms from Defendant Jantek due to Defendant Jantek's refusal to address the concerns raised in the Appleby Letter.

17.     Defendant Jantek's organizational documents include, *inter alia*, a Limited Liability Operating Agreement dated August 1995 (the "Jantek Operating Agreement"), as amended by the First Amendment to Operating Agreement for Jantek Industries, L.L.C., dated January 1, 2002 (the "First Amendment"), which set forth the duties and responsibilities of the company and the company's officers to the owners of Defendant Jantek, including Plaintiff.  A copy of the Jantek Operating Agreement is attached hereto as Exhibit D.  A copy of the First Amendment is attached hereto as Exhibit E.

18.     The First Amendment requires, *inter alia*, that during all times relevant hereto (i) Defendant Kailian shall act or fail to act on behalf of Defendant Jantek only per the approval of a five-member Board of Advisors; (ii) each member of the Board of Advisors is to be elected to a one year term every October, to serve for the following year; (iii) a minimum ninety percent (90%) approval of

Defendant Jantek's owners is required for a member to be elected to serve on the Board of Advisors; (iv) the Board of Advisors is to meet at least quarterly each year; and (v) each quarterly meeting of the Board of Advisors must be scheduled at least three months in advance.  (Exhibit E at p. 10, Section 18.2.)

19.     The First Amendment further requires, *inter alia*, that during all times relevant hereto, the written consent of at least four members of the Board of Advisors, in conjunction with the unanimous consent of all the owners of Defendant Jantek, is required in order for the company to take any actions "in contradiction or violation of, in any way, any Acquisition Agreement, to include any of the Affiliated Agreements[.]"  (Exhibit E at p. 11, Section 18.3.1.)

20.     "Affiliated Agreements" is defined to include the Supply Agreement. (Exhibit A at p. 14, Section 8(C).)

21.     The Jantek Operating Agreement authorizes any owner to bring an action for specific performance to restrain or enjoin any act which would cause a breach, or compelling the performance of any obligation which, if not performed, would constitute a breach of the Jantek Operating Agreement.  (Exhibit D at p. 21, Section 9.3.)

## APPLICABLE LAW

22.     Section 1 of the Sherman Act, 15 U.S.C. § 1, prohibits contracts in restraint of trade or commerce.

23.     Section 14 of the Clayton Act, 15 U.S.C. § 14, prohibits exclusive dealing contracts that substantially lessen competition or tend to create a monopoly in any line of commerce.

24.     Any person injured in his business or property by violations of the aforementioned antitrust laws may sue for damages under 15 U.S.C. § 15.

25.     Any person, firm, corporation or association may sue for and have injunctive relief against threatened loss or damage by a violation of the antitrust laws under 15 U.S.C. § 26.

26.     Pennsylvania and New Jersey law provides causes of action for breach of fiduciary duty to members/owners of limited liability companies and for breach of contract.

## COUNT I

### Violation of Sherman Act, 15 U.S.C. § 1
### Plaintiff v. Defendant Jantek and Defendant Kailian

27.     Paragraphs 1 through 26 are realleged.

28.     The Supply Agreement is an exclusive arrangement that impermissibly restrains Appleby from competitively acquiring replacement windows and patio rooms in connection with its business operations.

29.     The Supply Agreement affects Appleby's operations in Pennsylvania,
Delaware, Maryland, northwestern New Jersey and all of southern New Jersey, as
well as any other areas that Appleby conducts business and is forced to buy
products exclusively from Defendant Jantek.  (Exhibit B at pp.1-3 and Exhibit 1
thereto.)

30.     As such, Defendant Jantek, by entering the Supply Agreement, has
caused a restraint of trade or commerce "among the several states" as such terms
are interpreted under the Sherman Act and, thereby, violated Section 1 of the
Sherman Act, 15 U.S.C. § 1.

31.     As Majority Member, General Manager and CEO of Defendant
Jantek, Defendant Kailian has caused Defendant Jantek to enter into and seek to
enforce the Supply Agreement and, thereby, violated Section 1 of the Sherman
Act, 15 U.S.C. § 1.

32.     Defendant Kailian has, in addition, commenced an equity action in the
Court of Common Pleas of York County, Pennsylvania against Appleby and its
chief executive officer, Mark A. Curry, to specifically enforce the Supply
Agreement, which is a further attempt by Defendant Kailian to restrain trade and
commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

33.     Plaintiff has suffered damages because Defendants' conduct adversely affected Appleby's business operations, and as such, damaged Plaintiff as an owner of Appleby.

WHEREFORE, Plaintiff respectfully requests this Court to:

(A)     Declare the Supply Agreement to be an illegal and impermissible restraint on trade and commerce in violation of the Sherman Act as set forth herein.

(B)     Enter judgment in favor of Plaintiff against the Defendants, jointly and severally, declaring the Defendants' conduct to be in violation of the Sherman Act as set forth herein and permanently enjoining Defendants from enforcing any provisions of the Supply Agreement which require Appleby to exclusively purchase products from Defendant Jantek.

(C)     Enter judgment in favor of Plaintiff against the Defendants, jointly and severally, awarding Plaintiff treble her actual damages, together with pre-judgment interest thereon at the applicable rate from the date of each violation until the date of judgment, together with attorneys' fees, expert witness fees, and the costs of this lawsuit, as provided for by 15 U.S.C. § 15(a), plus such other and further relief as this Court deems appropriate.

## COUNT II

**Violation of Clayton Act, 15 U.S.C. § 14**
**Plaintiff v. Defendant Jantek and Defendant Kailian**

34.     Paragraphs 1 through 33 are realleged.

35.     The Supply Agreement is an exclusive contract that substantially lessens competition or tends to create a monopoly in commerce in the Pennsylvania, Delaware, Maryland, northwestern New Jersey and all of southern New Jersey, as well as any other areas that Appleby conducts business and is forced to buy products exclusively from Defendant Jantek in violation of Section 14 of the Clayton Act, 15 U.S.C. § 14.

36.     As such, Defendant Jantek, by entering the Supply Agreement, has substantially lessened competition and attempted to create a monopoly in commerce in violation of Section 14 of the Clayton Act, 15 U.S.C. § 14.

37.     As Majority Member, General Manager and CEO of Defendant Jantek, Defendant Kailian has caused Defendant Jantek to enter into and seek to enforce the Supply Agreement and, thereby, violated Section 14 of the Clayton Act, 15 U.S.C. § 14.

38.     Defendant Kailian has, in addition, commenced an equity action in the Court of Common Pleas of York County, Pennsylvania against Appleby and its chief executive officer, Mark A. Curry, to specifically enforce the Supply Agreement, which is a further attempt by Defendant Kailian to substantially lessen competition and create a monopoly in commerce in violation of Section 14 of the Clayton Act, 15 U.S.C. § 14.

39.     Plaintiff has suffered damages because Defendants' conduct adversely affected Appleby's business operations, and as such, damaged Plaintiff as an owner of Appleby.

WHEREFORE, Plaintiff respectfully requests this Court to:

(A)     Declare the Supply Agreement to be an unlawful exclusive contract which substantially lessens competition and attempts to create a monopoly in commerce in violation of the Clayton Act as set forth herein.

(B)     Enter judgment in favor of Plaintiff against the Defendants, jointly and severally, declaring the Defendants' conduct to be in violation of the Clayton Act as set forth herein and permanently enjoining Defendants from enforcing any provisions of the Supply Agreement which require Appleby to exclusively purchase products from Defendant Jantek.

(C)     Enter judgment in favor of Plaintiff against the Defendants, jointly and severally, awarding Plaintiff treble her actual damages together with pre-judgment interest thereon at the applicable rate from the date of each violation until the date of judgment, together with attorneys' fees, expert witness fees, and the costs of this lawsuit, as provided for by 15 U.S.C. § 15(a), plus such other and further relief as this Court deems appropriate.

## COUNT III

### Breach of Contract and Fiduciary Duty
### Plaintiff v. Defendant Jantek and Defendant Kailian

40.     Paragraphs 1 through 39 are realleged.

41.     As Majority Member, General Manager and CEO of Defendant
Jantek, Defendant Kailian has a contractual and fiduciary duty under Section 18.3
of the First Amendment to cause Defendant Jantek to obtain the written consent of
at least four members of the Board of Advisors and the unanimous consent of all
the owners of Defendant Jantek to take any action contradictory to any of the
Affiliated Agreements, which Defendant Kailian has refused and failed to do as
follows:

(1)     Defendant Kailian has purposefully caused Defendant Jantek to
enter an exclusive contractual arrangement with Appleby in violation of
federal antitrust laws and has commenced a civil suit to enforce such
exclusive contract in further violation of antitrust laws and, as a result, has
failed to operate Defendant Jantek in compliance with Governmental
Regulations as required by Section 4.J. of the Jantek Purchase Agreement,
thus acting contradictory to the Affiliated Agreements, all in violation of
Section 18.3 of the First Amendment.

(2)     Defendant Kailian purposefully caused Defendant Jantek to
expand its business to encompass (i) the retail over-the-counter sale of

products and services; and (ii) the sale of third-party manufactured primary entry doors, both in violation of Section 5.H. of the Jantek Purchase Agreement, thus acting contradictory to the Affiliated Agreements, in violation of Section 18.3 of the First Amendment.

(3)     Defendant Kailian purposefully caused Defendant Jantek to disregard and ignore the Appleby Letter, in violation of the Supply Agreement, thus acting contradictory to the Affiliated Agreements, in violation of Section 18.3 of the First Amendment.

42.     Defendant Kailian's acts, as set forth above, constitute blatant and ongoing breaches of contract and willful and reckless violations of his fiduciary duties and have caused Plaintiff and the other owners of Defendant Jantek to suffer irreparable harm and monetary damages.

43.     Plaintiff has, at all times pertinent hereto, been an owner of an interest in Defendant Jantek.

44.     Any effort by Plaintiff to make demand on the company to secure enforcement of Plaintiff's claims would be futile because Defendant Kailian, at all times pertinent hereto, has owned the controlling interest in the company and has declined to take appropriate action.

45.     Plaintiff has the right to seek specific performance of the Jantek

Operating Agreement pursuant to Section 9.3 of that agreement.  (Exhibit D at p.

21, Section 9.3.)

WHEREFORE, Plaintiff requests this Court to:

(A)     Declare Defendants to be in breach of Section 18.3 of the First

Amendment.

(B)     Enter judgment in favor of Plaintiff against Defendants, jointly and

severally, declaring Defendants' conduct to be in violation of law as set forth

herein and requiring Defendants to specifically perform under Section 18.3 of the

First Amendment by:

(1)     ceasing any and all violations of antitrust laws;

(2)     ceasing to permit Jantek to offer retail over-the-counter sales of

products and services and sales of third-party manufactured primary entry

doors; and

(3)     ceasing any attempt to enforce the Supply Agreement.

(C)     Award compensatory and punitive damages to Plaintiff in an amount

to be determined.

(D)     Grant such other and further relief as this Court deems appropriate.

## COUNT IV

### Breach of Contract and Fiduciary Duty
### Plaintiff v. Defendant Jantek and Defendant Kailian

46.     Paragraphs 1 through 45 are realleged.

47.     As Majority Member, General Manager and CEO of Defendant
Jantek, Defendant Kailian has a contractual and fiduciary duty to operate the
company in accordance with the requirements of the Jantek Operating Agreement
and the First Amendment.

48.     Defendant Kailian has utterly and purposefully disregarded his
contractual and fiduciary duties under Section 18.2 of the First Amendment by:

(1)     Failing to maintain a five-member Board of Advisors.

(2)     Failing to cause or otherwise permit the owners of Defendant
Jantek, including Plaintiff, to elect the members of the Board of Advisors.

(3)     Failing to cause the Board of Advisors to meet at least quarterly
each year.

(4)     Failing to schedule meetings of the Board of Advisors at least
three months in advance.  (Exhibit E at p. 10, Section 18.2.)

49.     Defendant Kailian has further disregarded his contractual and
fiduciary duties by failing to cause to have delivered to each owner of Defendant
Jantek, including Plaintiff, an annual compilation report prepared by the

company's independent accountants as required by Section 8.4 of the Jantek Operating Agreement.  (Exhibit D at p. 19, Section 8.4.)

50.     Defendant Kailian's acts, as set forth above, constitute blatant and ongoing breaches of contract and willful and reckless violations of his fiduciary duties and have caused Plaintiff and the other owners of Defendant Jantek to suffer irreparable harm and monetary damages.

51.     Plaintiff has, at all times pertinent hereto, been an owner of an interest in Defendant Jantek.

52.     Any effort by Plaintiff to make demand on the company to secure enforcement of Plaintiff's claims would be futile because Defendant Kailian, at all times pertinent hereto, has owned the controlling interest in the company and has declined to take appropriate action.

53.     Plaintiff has the right to seek specific performance of the Jantek Operating Agreement pursuant to Section 9.3 of that agreement.  (Exhibit D at p. 21, Section 9.3.)

WHEREFORE, Plaintiff requests this Court to:

(A)     Declare Defendants to be in breach of Section 8.4 of the Jantek Operating Agreement and Section 18.2 of the First Amendment.

(B)     Enter judgment in favor of Plaintiff against Defendants, jointly and severally, declaring Defendants' conduct to be in violation of law as set forth

herein and requiring Defendants to specifically perform under Section 8.4 of the

Jantek Operating Agreement and Section 18.2 of the First Amendment by:

      (1)    causing Defendants to establish and maintain a five-member

Board of Advisors as required by Section 18.2 of the First Amendment;

      (2)    ordering Defendants to cause or otherwise permit the owners of

Defendant Jantek, including Plaintiff, to elect the members of the Board of

Advisors as required by Section 18.2 of the First Amendment;

      (3)    ordering Defendants to cause the Board of Advisors to meet at

least quarterly each year as required by Section 18.2 of the First

Amendment;

      (4)    ordering Defendants to schedule meetings of the Board of

Advisors at least three months in advance as required by Section 18.2 of the

First Amendment; and

      (5)    ordering Defendants to cause financial information to be

compiled and delivered to the owners of Defendant Jantek, including

Plaintiff, as required by Section 8.4 of the Jantek Operating Agreement.

(C)    Award compensatory and punitive damages to Plaintiff in an amount

to be determined.

(D)    Grant such other and further relief as this Court deems appropriate.

## COUNT V

### Breach of Contract and Fiduciary Duty
### Plaintiff v. Defendant Jantek and Defendant Kailian

54.     Paragraphs 1 through 53 are realleged.

55.     As Buyer, Majority Member, General Manager and CEO of Defendant Jantek, Defendant Kailian has a contractual and fiduciary duty to operate Defendant Jantek in accordance with the Jantek Purchase Agreement.

56.     Defendant Kailian has purposefully disregarded his contractual and fiduciary duties under Section 4.J. of the Jantek Purchase Agreement to operate Defendant Jantek in compliance with Governmental Rules as defined in the Jantek Purchase Agreement by causing Defendant Jantek to enter into the Supply Agreement and by personally bringing an action to enforce the Supply Agreement in violation of antitrust laws (as set forth in Counts I and II above), both acts being in violation of Section 4.J. of the Jantek Purchase Agreement.  (Exhibit A at p. 8, Section 4.J.)

57.     Defendant Kailian has further disregarded his contractual and fiduciary duties under Section 4.G. of the Jantek Purchase Agreement to operate Defendant Jantek in compliance with its contracts by causing Defendant Jantek to produce subpar products and ignore the complaints of Appleby in breach of the Supply Agreement, such acts causing Appleby to cease buying patio rooms from Defendant Jantek which has resulted in a Material Adverse Change (as defined by

the Jantek Purchase Agreement) to Defendant Jantek and constitutes a violation of Section 4.G. of the Jantek Purchase Agreement.  (Exhibit A at p. 7, Section 4.G.)

58.    Defendant Kailian's acts, as set forth above, constitute blatant and ongoing breaches of contract and willful and reckless violations of his fiduciary duties and have caused Plaintiff and the other owners of Defendant Jantek to suffer irreparable harm and monetary damages.

59.    Defendant Jantek is joined to the contractual obligations contained in Sections 4 & 5 of the Jantek Purchase Agreement.

60.    Defendant Jantek is in breach of its contractual duties to Plaintiff under Sections 4 & 5 of the Jantek Purchase Agreement, as set forth above.

61.    Plaintiff has, at all times pertinent hereto, been an owner of an interest in Defendant Jantek.

62.    Any effort by Plaintiff to make demand on the company to secure enforcement of Plaintiff's claims would be futile because Defendant Kailian, at all times pertinent hereto, has owned the controlling interest in the company and has declined to take appropriate action.

WHEREFORE, Plaintiff requests this Court to:

(A)    Declare Defendants to be in breach of Section 4.J. of the Jantek Purchase Agreement;

(B)    Enter judgment in favor of Plaintiff against the Defendants, jointly and severally, declaring the Defendants' conduct to be in violation of law as set forth herein and requiring Defendants to specifically perform under Section 4.J. and Section 4.G. of the Jantek Purchase Agreement by:

(1)    causing Defendants to terminate or cease to perform under the Supply Agreement;

(2)    causing Defendants to cease making any efforts or attempts to enforce the terms of the Supply Agreement.

(C)    Award compensatory and punitive damages to Plaintiff in an amount to be determined.

(D)    Grant such other and further relief as this Court deems appropriate.

## JURY DEMAND

63.    Plaintiff requests that her claims be tried before a jury.

Respectfully Submitted,

MILLER, POOLE & LORD, LLP

Date: January 7, 2005          /s/  Andrew J. Miller
                               William H. Poole, Jr., Esquire
                               Pa. Bar No. 28943
                               wpoole@mpl-law.com
                               Andrew J. Miller, Esquire
                               Pa. Bar No. 84012
                               amiller@mpl-law.com
                               139 East Philadelphia Street
                               York, PA  17403
                               (717) 845-1524